UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NARCISA DE JESUS YUGLA ALOMALIZA (A No. 245 937 904),

Petitioner,

v.

TIMOTHY S. ROBBINS, et al.,

Respondents.

No.  1:25-cv-1735 WBS CKD P

FINDINGS AND RECOMMENDATIONS

Petitioner, detained by the Immigration and Customs Enforcement Agency (ICE), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  For the reasons which follow, the court recommends that the petition be granted.

I. Facts

Petitioner, her spouse, and daughter, all natives of Ecuador, entered the United States near Eagle Pass, Texas on March 29, 2024, and were immediately detained.  ECF No. 2-2 at 2, 14. The next day, they were released and allowed to remain in the United States premised upon a determination, presumably pursuant to 8 C.F.R. § 1236.1(c)(8), that they were not dangerous and were likely to appear for immigration proceedings.  Id. at 2, 16. Petitioner was ordered to appear on April 30, 2025, for immigration proceedings in New York City, which she did.  Id. at 18. After release, petitioner and her family resided in San Mateo.  Id. at 2-3.

1

On November 1, 2025, petitioner was at her home with her daughter.  Id. at 4.  ICE officers knocked on the door and when petitioner answered, she was placed under arrest and transported to the California City Detention Center where she remains.  Id. at 5.

In her affidavit. ICE Deportation Officer Marbella Pano asserts petitioner was arrested because on five occasions between December 11, 2024, and August 15, 2025, petitioner failed to complete "self-report check ins."  ECF No. 11-1 at 2-3.  While not entirely clear, it appears from the record that one of the conditions of petitioner's release was that she respond immediately with a picture of herself when prompted via cell phone by ICE officials.  It is not clear how many times petitioner was required to "self-report" in this manner between March 30, 2024, and November 1, 2025 (petitioner suggests once a month, ECF No. 2-2 at 3), but it does not appear that any missed report was part of an attempt to mislead ICE officials as to petitioner's whereabouts or was based on a willful failure to comply.[1]  Petitioner admits that on two occasions she failed to immediately self-report.  Petitioner claims this was due to her cell phone not being charged at the time the message was sent by ICE.  She received both messages within a day of when they were sent and immediately responded.   ECF No. 2-2 at 3.

Petitioner claims that other than the two instances when she did not immediately self-report, she complied with all other requirements imposed upon her including required physical appearances at hearings and ICE offices.  Id. at 4.

Petitioner, her husband, and child filed an application for asylum on December 2, 2025.  Id. at 40.  It appears that petitioner's most recent immigration proceedings were held on March 13, 2026, in San Francisco.  Id. at 35.  The status of petitioner's application for asylum is not clear.

Nothing before the court suggests petitioner has ever been arrested or convicted of committing a crime, nor is she subject to an order of removal.

/////

---

[1] Notably, Officer Pano's declaration does not attach as exhibits petitioner's I-213, her I-220A Order of Release on Recognizance, nor any documentation from the ATD program documenting each of petitioner's purported violations.

2

II.  Standard for Habeas Relief.

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

III.  Violation of Fifth Amendment

A.  Liberty Interest

Petitioner contends that she was denied a pre-deprivation hearing before a neutral arbiter to determine whether she violated any terms of her release justifying her re-detention by ICE in violation of her Fifth Amendment right to due process. ECF No. 1 at 3. Generally speaking, the Due Process Clause applies to all persons within the "geographic borders" of the United States. Id. at 693.  "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." Plyler v. Doe, 457 U.S. 202, 210 (1982).  Due process protection applies to non-citizens who have "passed through our gates." Shaughnessy v. U.S., 345 U.S. 206, 212 (1953).  Even in the immigration context, government detention is permissible "only 'in certain special and narrow nonpunitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" Kong v. United States, 62 F.4th 608, 616 (1st Cir. 2023) (quoting Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts

3

have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey [ v. Brewer, 408 U.S. 471 (1972)]." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, the parolee's "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in "continued liberty." Id. at 481-84.

The regulations authorizing ICE to release a noncitizen from custody into the United States require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017).

In light of all of the foregoing, the court finds that petitioner's initial release created a reasonable expectation that she would be entitled to retain her liberty as long as she was not a flight risk or dangerous. See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest). "[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody he has a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "[T]he government's discretion to incarcerate non-citizens is

4

always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Respondents argue that petitioner's re-arrest and detention were mandated by statute because although petitioner was physically admitted into the United States, she remains an "applicant for admission" under 8 U.S.C. § 1225(b) not entitled to due process protection. For support, respondents point to DHS v. Thuraissigiam, 591 U.S. 103 (2020) where the Supreme Court found that an alien arrested inside the United States near the border around time of his illegal entry, detained, and ordered removed was not a person present in the country and therefore was not entitled to due process protection.

While petitioner still may be an "applicant for admission" as that term is defined in 8 U.S.C. § 1225(b), she has also been allowed to "pass through our gates," Shaughnessy, 345 U.S. at 212, is a person within the border of the United States entitled to Due Process under Zadvydas. These facts distinguish her from Supreme Court precedent as to persons: (1) detained at or near the border and never released into the country, i.e. Thuraissigiam; Ekiu v. United States, 142 U.S. 651 (1892) (petitioner allowed off ship in San Francisco, but ordered detained at nearby mission) and (2) persons released into the country, but already subject to a final order of removal, i.e. Kaplan v. Tod, 267 U.S. 228 (1925) (petitioner denied admission at Ellis Island and ordered removed was released to custody of an immigrant aid society while deportation suspended during World War I).[2]

The undersigned rejects the premise that petitioner, who was released into the country, has never been charged with a crime, has not been ordered removed, and has ties to the San Mateo community, does not possess the most fundamental of rights not to be deprived of life, liberty or property by the executive for any reason the executive sees fit. See Jennings v. Rodriguez, 583 U.S. 281, 332 (2018) (Breyer, J., dissenting) ("Freedom from arbitrary detention is as ancient and important a right as any found within the Constitution's boundaries."). Denying petitioner due

---

[2] In Leng May Ma v. Barber, 357 U.S. 185 (1958), the Supreme Court found that a petitioner allowed entrance into the U.S. while her admission was under consideration was not entitled to certain statutory protections. The requirements of the Due Process clause were not at issue.

process protection because she is technically an "applicant for admission" as opposed to an "admittee" as those terms are defined in immigration law, "subordinates fact to fiction, [and] disregards the plain meaning of the Due Process Clause, which promises its protection to every person within the United States." Rincon v. Hyde, No. 15-12633 BEM, 2025 WL 3122784, * 2 (Dist. of Mass., November 7, 2025) (internal quotation omitted). "Indeed, to apply the entry fiction doctrine to a case like Petitioner's is to set aside the plain meaning of the Fifth Amendment altogether." Id. at * 7.

B. Process Due

Next, the Court turns to what procedures are necessary to ensure that the deprivation of a protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez, 872 F.3d at 993 (applying Mathews factors in immigration detention context). "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a paramount interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.).

"The risk of an erroneous deprivation [of liberty] is high" without any required process and, in particular, when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 1:25-cv-0197 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight

6

or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Nothing suggests the officials who decided to detain petitioner made any attempt to determine whether she was dangerous or a risk of flight.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low."  Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025).  Detention hearings in immigration courts are routine and impose a "minimal cost."  Id.   Further, such hearings provide help to ensure ICE officers act within the boundaries of the law which is within ICE's interest.

Considering any person in the United States has a supreme interest in liberty, the likelihood of erroneous deprivation of liberty by ICE without any guardrails and that the Department of Homeland Security already has immigration courts in place to ensure deprivation of liberty is lawful, petitioner is entitled to a bond hearing finding that results in a legal justification for detention.  Further, "[a]n essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are entitled to due process, including a pre-deprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention."  F.M.V. v. Wofford, 1:25-cv-2381 KES SAB, 2025 WL 3083934 at *6 (E.D. Cal. Nov. 4, 2025) (collecting cases).  Nothing in the record before the court suggests there were any "urgent concerns" for detaining petitioner without a hearing and thus "a pre-deprivation hearing [was] required to satisfy due process."  Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

/////

/////

IV.   Law of the Case

On December 5, 2025, the district court judge assigned to this case denied a motion for a temporary restraining order finding that petitioner failed to demonstrate a likelihood of success as to her claim that she was denied due process.  ECF No. 8. He also referred the matter to the undersigned for further proceedings.  Id. On December 8, 2025, the undersigned ordered respondents to file a response to the pending petition for writ of habeas corpus, including respondents' position as to the extent to which the District Judge's December 5 order bound this court pursuant to the "law of the case" doctrine.

While the District Judge found that petitioner was not likely to succeed on the merits of her due process claim, "[a] preliminary determination of likelihood of success on the merits . . . is ordinarily tentative."  Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc., 962 F.2d 268, 274 (2d Cir. 1992).  "It would therefore be anomalous at least in most cases, and here, to regard the initial ruling as foreclosing the subsequent, more thorough consideration of the merits that the preliminary injunction expressly envisions." Id. at 274.

The District Judge could have made a ruling on the merits if he wished even without having obtained a response from respondents.  28 U.S.C. § 2243.  Instead, inundated by motions for temporary restraining orders similar to the one presented in this case--like all of the District Court Judges of this district because of an executive branch shift in policy--requiring immediate attention, he ruled on the motion for temporary restraining order without a response from respondents on the merits, and referred the claim to this court for a final determination not constrained by urgency.  Under these circumstances, the "law of the case doctrine" does not apply.

V.      Remedy

Having found that petitioner's Fifth Amendment right to due process was violated based on the lack of a pre-deprivation hearing, the undersigned finds that she is entitled to be immediately released from custody.  A post-deprivation hearing at this juncture is not an adequate remedy because it would condone the violation of petitioner's right to due process in the first

instance.  See also E.A. T.-B v. Wamsley, __ F.Supp. 3d __, No. 25-1192-KKE, 2025 WL 2402130 (W.D. Wash. Aug. 19, 2025).

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Respondent's motion to dismiss (ECF No. 11) be DENIED.

2.  The petition for writ of habeas corpus (ECF No. 8) be GRANTED.

3.  Petitioner be released from Immigration and Customs Enforcement Service custody.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven (7)** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within **seven (7)** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 27, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
alom1735.imm.frs